UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AQUALLIANCE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES BUREAU OF RECLAMATION, et al., <br><br> Defendants. | Case No. 1:20-cv-00878−JLT-EPG <br><br> ORDER REQUESTING ADDITIONAL BRIEFING RE MOOTNESS |

Plaintiffs in this case challenge a five-year program (2020-2024) designed to allow sellers located upstream of the Sacramento/San Joaquin Delta ("Delta") to sell/transfer water to willing buyers south of the Delta (the "Project"). Claims in the case arise under the National Environmental Policy Act (NEPA), Endangered Species Act (ESA), California Environmental Quality Act (CEQA), and California's Public Trust Doctrine. Currently pending before the Court are highly complex cross-motions for summary judgment challenging the September 2019 Environmental Impact Statement/Environmental Impact Report for the Long Term Water Transfer Project (LTWT EIS/R) prepared under CEQA and NEPA as well as the related biological opinion issued by the U.S. Fish and Wildlife Service (LTWT BiOp). As the Court has previously indicated, it has begun work on the pending motions, but a ruling has been

1

1  significantly delayed by the ongoing judicial resource shortage, pressing criminal matters, and
2  other time-consuming emergency motions. As the 2024 water year began, given the nature of the
3  water supply situation on the ground and the established fact that transfers under the Project have
4  not occurred in every year, it became apparent that this case might soon be mooted by the passage
5  of time before a ruling could be issued. At the Court's request, the Parties have provided periodic
6  updates on the challenged Project. The most recent of these, a joint status report filed on June 10,
7  2024, indicates in no uncertain terms that <u>no</u> transfers will occur in this <u>final year of the Project's</u>
8  <u>scope</u>. (Doc. 68 at 2.) Federal Defendants and San Luis & Delta Mendota Water Authority (San
9  Luis), therefore, argue that the case is now moot. (*Id.*)

10  In response, Plaintiffs appear to invoke the doctrine that allows for adjudication of an
11  otherwise moot controversy that is "capable of repetition yet [may] evade review." *Native Vill. of*
12  *Nuiqsut v. Bureau of Land Mgmt.*, 9 F.4th 1201, 1209 (9th Cir. 2021). (*See* Doc. 68 at 2.) This
13  exception has two requirements: "(1) the duration of the challenged action is too short to allow
14  full litigation before it ceases or expires, and (2) there is a reasonable expectation that the
15  plaintiffs will be subjected to the challenged action again." *Id*. Unlike situations where a
16  defendant's voluntary conduct in response to litigation is the source of mootness and the burden is
17  on the defense to demonstrate that the conduct will not recur, *W. Virginia v. Env't Prot. Agency*,
18  597 U.S. 697, 719 (2022), under the capable of repetition but evading review exception "the
19  <u>plaintiffs</u> have the burden of showing that there is a reasonable expectation that they will once
20  again be subjected to the challenged activity." *Nuiqsut*, 9 F.4th at 1209 (internal citations and
21  quotations omitted) (emphasis added); *see also Dep't of Fish & Game v. Fed. Subsistence Bd.*, 62
22  F.4th 1177, 1181 (9th Cir. 2023).

23  Moreover, in the context of a challenge to an environmental document, Ninth Circuit
24  authority suggests that a plaintiff must demonstrate not only that the same kind of project activity
25  will recur, but also that the challenged reasoning will be relied upon in a subsequent
26  environmental document. *See Ramsey v. Kantor*, 96 F.3d 434, 446 (9th Cir. 1996). The *Ramsey*
27  plaintiffs challenged a 1993 fisheries management decision that had been supported by a
28  biological opinion. *See id*. at 445. When the 1993 decision was rendered moot, the plaintiffs

2

1 argued the case should nonetheless continue because the 1994 decision relied on that same
2 biological opinion. *See id*. at 445–46. The Ninth Circuit disagreed because, though the 1994
3 decision relied on the biological opinion for some inputs, the agency was using a different
4 "method of calculating" the environmental impacts. *Id*.; *see also Nuiqsut*, 9 F.4th at
5 1210.("[W]hen an agency 'rel[ies] on the same biological opinion' but 'us[es] a different method
6 of calculating' the final course of action in future environmental reports, the case is moot.")
7 (*citing Ramsey*, 96 F.3d at 446); *Fed. Subsistence Bd*., 62 F.4th at 1184 ("[W]hen future decisions
8 will be based on different criteria, factors, or methods, we have also found no reasonable
9 expectation of repetition.").

Plaintiffs point out that "at least six state and/or federal agencies, including defendant San Luis are proceeding with environmental reviews for water transfer projects that expressly rely on the challenged EIS/EIR in this case." (*Id*.; *see also* Doc. 62 at 3.) Thus, Plaintiffs contend, it is "abundantly clear that these intrastate water transfers are reasonably expected to recur." (Doc. 38 at 2–3.) Federal Defendants are correct that the cited pages of these documents largely reference the LTWT EIS/R for background purposes, (*id*. at 2) but that is not exclusively so. For example, an addendum to an EIS covering transfers for the Western Canal Water District and Richvale Irrigation District Transfers from 2023 to 2027, discussed the LTWT EIS/R to support a particular method of identifying flow changes that may "potentially affect fish." (Doc. 63, Exhibit C, at p. 3-7, and 4-1.)[1] However, it is not clear how the methods and reasoning utilized in the LTWT EIS/R or BiOp are being relied upon in this document. San Luis appears to be preparing environmental documents related to a renewed water transfer project set to commence in 2025. (*See* Doc. 63 at 170.) But, absent any details related to those environmental documents, it is again not clear how the current challenge will relate to issues that may arise in the future San Luis project.

For these reasons, the Court believes supplemental briefing on the question of mootness is required. Among other things, Plaintiffs' burden demands that they demonstrate the "capable of repetition yet evading review" exception applies independently to each issue in their case.[2] For

---

[1] Other example environmental documents provided by Plaintiffs appear to only cover 2024, (Doc. 63 at Exh. A and B), so seem unlikely to overcome the mootness exception raised here.

[2] Mootness is sometimes described as being "evaluated on a claim-by-claim basis." *N. Coast Rivers All. v. United*

example, if certain challenged aspects of the LTWT EIS/R or the LTWT BiOp will not be relied upon again in the future, then *Ramsey* suggests that those issues are moot.

The Court regrets the length of time that these cases have been pending and the consequences of this delay for the parties, but nonetheless cannot avoid evaluating its own jurisdiction. Thus, within 30 days following the issuance of this minute order, Plaintiffs shall submit a supplemental brief no longer than 15 pages in length addressing the issue of mootness; thereafter, Federal Defendants shall have 21 days to file a responsive brief of equal or lesser length.[3] The previously imposed requirement for the filing of status reports ever 30 days is VACATED.

IT IS SO ORDERED.

Dated:   **July 1, 2024**

UNITED STATES DISTRICT JUDGE

---

*States Dep't of the Interior*, No. 1:16-CV-00307-DAD-SKO, 2021 WL 5054394, at *3 (E.D. Cal. Nov. 1, 2021) (citing *Pac. Nw. Generating Co-op. v. Brown*, 822 F. Supp. 1479, 1506 (D. Or. 1993), *aff'd*, 38 F.3d 1058 (9th Cir. 1994). However, *Ramsey* suggest that it may be more appropriate to describe the inquiry as one that must be undertaken on an issue-by-issue. *See Ramsey*, 96 F.3d at 446; *see also Powell v. McCormack*, 395 U.S. 486, 497 (1969) ("Where one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy."

[3] The Court will entertain any reasonable stipulation regarding these deadlines.

4